IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **THE CECILIAN BANK**, | : | Case No. 1:13-cv-00879 |
| | : | |
| Plaintiff, | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER DENYING DEFENDANT'S |
| | : | MOTION TO DISMISS COMPLAINT |
| **JAMES A. GOLDSMITH**, | : | |
| | : | |
| Defendant. | : | |

This matter is before the Court on Defendant James Goldsmith's Motion to Dismiss

Complaint. (Doc. 5.) The Cecilian Bank ("Cecilian") has filed a breach of a personal guaranty

claim against Goldsmith with respect to a guaranty for $2,250,000 that Goldsmith executed as

security for a loan issued to his company. (*See* Docs. 2, 15.) Goldsmith moves for dismissal of

this suit under Federal Rule of Civil Procedure 12(b)(6) on the basis that Cecilian lacks standing

because the bank has not established that it is the holder of the guaranty with the right to enforce

its terms. For reasons stated below, the Court concludes that Cecilian has demonstrated that it

has an interest in the guaranty and therefore has standing to enforce its terms. Accordingly, the

Court will **DENY** Defendant's Motion to Dismiss Complaint.

I.      BACKGROUND

The instant dispute originated with the execution of a loan agreement between two

entities—Integra Bank National Association ("Integra") and Gator Milford, LLC ("Gator

Milford")—neither of which is a party in this lawsuit. Defendant Goldsmith was at all times

relevant to this suit the president of Gator Milford. On April 7, 2006, Integra entered into an

agreement with Gator Milford, pursuant to which Integra agreed to loan Milford up to

$4,500,000.  (Doc. 15-1 at Page ID 67.)  Three documents were executed, all of which Plaintiff

attached to its Complaint: (1) a loan agreement between Gator Milford and Integra (*id*. at Page

ID 67–101); (2) a promissory note outlining the terms for repayment of the loan amount (*id*. at

Page ID 102–08); and  (3) a guaranty, pursuant to which Goldsmith personally guaranteed the

debt owed by Gator Milford under the note and agreed to payment of the "top" $2,250,000 of the

loan amount, (*id*. at Page ID 109–22).  On the signature page of the promissory note, Integra

negotiated the note to Cecilian via the following notation: "Pay to the order of The Cecilian

Bank, without recourse. Integra Bank N.A. By: /s/Sharon A. Kensell, SVP."  (*Id*. at Page ID

108.)

Thereafter, Cecilian and Gator Milford executed at least two promissory note

modification agreements, the most recent of which, signed on April 10, 2012, extended the

maturity date of the note from May 1, 2012 to May 1, 2013.  (*Id*. at Page ID 131–32.)  The April

10, 2012 modification agreement recognized that Gator Milford's promissory note was "in favor

of Integra . . . and later assigned to The Cecilian Bank." (*Id*.)  Goldsmith signed that

modification agreement in both his official capacity as Gator Milford's president and his

individual capacity as guarantor.  (*Id.*).

According to Cecilian, Gator Milford failed to satisfy the loan in full by May 1, 2013.  As

a result, on September 13, 2013, Cecilian demanded payment from Goldsmith under the terms of

the guaranty.  Cecilian alleges that Goldsmith has not paid the $2,250,000 and thus has breached

the terms of the guaranty.

Goldsmith argues that Cecilian's claim should be dismissed because Cecilian has not established that it is the holder of the guaranty with the right to enforce its terms.  Goldsmith points to the Complaint, wherein Cecilian alleges that "Integra assigned to Plaintiff all of its rights and interests in the loan documents, including the Loan Agreement, Note, and Guaranty." (*Id*. at Page ID 64.)  Goldsmith contends that this statement, without providing an actual assignment of the guaranty, is insufficient to establish that Cecilian is the holder of the guaranty.

Cecilian responds to Goldsmith's motion by referencing the language in the personal guaranty, which Cecilian attached to the Complaint.  The guaranty explicitly provides that "[i]f any or all of the Obligations are assigned by Lender, this Guaranty will inure to the benefit of Lender's assignee."  (*Id.* at Page ID 119.)  Cecilian argues that Integra's negotiation of the promissory note to Cecilian amounted to the assignment of an "Obligation," thus triggering the above-quoted clause in the guaranty.  Furthermore, Cecilian contends that even if that clause does not establish its standing, the guaranty would have automatically followed the promissory note under Ohio law because the guaranty was security for the note.

In his reply memorandum, Goldsmith responds that Cecilian did not provide any documentation that Integra intended to assign the guaranty, and that Integra's negotiation of the note to Cecilian is insufficient to establish Integra's intent to assign the guaranty.  Furthermore, Goldsmith contends that the guaranty does not automatically follow the note under Ohio law. The dismissal motion is now ripe for consideration.

## II.     STANDARDS GOVERNING MOTIONS TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A

district court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997).  However, this tenet is inapplicable to legal conclusions, or legal conclusions couched as factual allegations, which are not entitled to an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To withstand a dismissal motion, a complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]he complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Harvard v. Wayne Cty.*, 436 F. App'x 451, 457 (6th Cir. 2011) (internal quotation or citation omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.[1] The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 678.

## III.    ANALYSIS

As indicated above, Defendant argues that Plaintiff lacks standing because it has not shown that it is the real party in interest with respect to Defendant's personal guaranty.

---

[1]  In accordance with this standard, the Supreme Court also specifically repudiated the pleading standard articulated in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), that a complaint fails to state a claim when it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S. at 562–63.  The Court in *Twombly* said the "no set of facts" language from *Conley* had "earned its retirement" and was "best forgotten." *Id.* at 563.

> In order for a federal court to exercise jurisdiction over a matter, the party seeking relief must have standing to sue.  Standing has both constitutional and prudential dimensions.  The constitutional requirements for standing emanate from Art. III, § 2, of the U.S. Constitution, which grants federal courts jurisdiction over "cases" and "controversies."

*Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir. 1996).  The minimum threshold that a plaintiff must meet to establish standing requires the following:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations and footnote omitted)).

Citing Ohio law addressing the party in interest in breach of contract claims, Goldsmith contends that Cecilian lacks standing to bring this action because "only a party to the contract or an intended third-party beneficiary of the contract may bring an action on a contract in Ohio." *Discover Bank v. Brockmeir*, No. CA-2006-057-078, 2007 WL 959907, at *1 (Ohio Ct. App. Apr. 2, 2007) (citing *Grant Thornton v. Windsor House, Inc.*, 57 Ohio St. 3d 158, 161 (Ohio 1991), and noting that "unless the party has some real interest in the subject matter of the action, that party will lack standing to invoke the jurisdiction of the court").  According to Goldsmith, in this case, Cecilian has not established it is the current holder of the guaranty or that it has any enforceable interest in the Guarantee.  The Court disagrees.  While Cecilian has not produced an explicit assignment of the guaranty, it has presented evidence that it has an interest in the guaranty and that Goldsmith was aware of Cecilian's interest.

5

The terms of the guaranty and related loan documentation demonstrate that through the assignment of the promissory note to Cecilian, Cecilian also gained an interest in the guaranty executed as a security for the note.  In general, Ohio courts construe guaranty agreements "in the same manner as they interpret other contracts." *LB-RPR REO Holdings, L.L.C. v. Ranieri*, No. 11AP–471, 2012 WL 2389334, at \*6 (Ohio Ct. App.  June 26, 2012) (quoting *Nesco Sales & Rental v. Superior Elec. Co.*, No. 06AP-435, 2007 WL 611245, at \*3 (Ohio Ct. App. March 1, 2007)); *see also O'Brien v. Ravenswood Apartments, Ltd.*, 862 N.E.2d 549, 555 (Ohio Ct. App. 2006) ("[A] guarantor's liability . . . is governed by the terms used in the contract.").  Where the terms of the guaranty are plain and unambiguous, the court simply enforces the terms and cannot construe a different meaning.  *O'Brien*, 862 N.E.2d at 555.

In this case, there is no dispute that the guaranty in question is valid and that its terms apply to Goldsmith.  Nor do the parties dispute the validity of the promissory note modification agreements,[2] which reference the prior assignment of the promissory note to Cecilian and which were signed by Goldsmith.  (Doc. 15-1 at Page ID 131–32.)  The only point of contention is whether or not Goldsmith's guaranty was also assigned to Cecilian.  Pursuant to that guaranty, Goldsmith "unconditionally, guarantees Lender the prompt payment and performance of the  . . . the 'Obligations,'" which expressly include "all loans, advances, debts, liabilities, obligations, covenants and duties now and/or hereafter owing to Lender . . . from or by Borrower of any kind or nature, present or future, arising under: (i) the Promissory Note made by Borrower to Lender's order of even date herewith in the original principal amount of $4,500,000.00," with Goldsmith's total personal liability limited to the top $2,250,000 of the loan amount.  (*Id.* at Page

---

[2] Goldsmith does not address the promissory note modification agreement in either his motion to dismiss the complaint or his reply memorandum.

ID 109).  With regard to the assignment of any of the "Obligations," the terms of the guaranty

provide that:

> If any or all of the Obligations are assigned by Lender, this Guaranty will inure to the benefit of Lender's assignee, and to the benefit of any subsequent assignee, to the extent of the assignment or assignments; provided that no assignment will operate to relieve Guarantor from any duty to Lender hereunder with respect to any unassigned portion of the Obligations.

(*Id*. at 119).  According to the terms of the guaranty, the promissory note is considered an

"Obligation," which Integra assigned to Cecilian, thereby triggering the clause specifying that

the  "Guaranty will inure to the benefit of Lender's assignee."  (*See id.* at Page ID 109, 119.)[3]

    As an alternative route to establish standing, Cecilian contends that the guaranty would

have automatically followed the promissory note under Ohio law because the guaranty was

security for the note.   As support for that argument, Cecilian relies on two Ohio cases holding

---

[3] In his reply memoranum, Defendant relies heavily on the case *VCS Properties, L.L.C. v. Viking Steel, L.L.C.*, No. 09CA0090-M, 2010 WL 4927731 (Ohio Ct. App. Dec. 6, 2010). However, *VCS* is distinguishable from the case at hand.  In *VCS*, the plaintiff companies and the individual defendant guarantor's company entered into a joint venture which secured a loan from Comerica Bank for $4.9 million by way of a loan agreement and mortgage note.  *Id*. at *1.  As security for the loan, Comerica acquired several items including: (1) a "first priority Open-End Continuing Collateral Mortgage on the real property" owned by the plaintiffs, and (2) a personal guaranty from the individual defendant.  *Id*.  The joint venture entity ultimately defaulted on the loan and filed a petition for Chapter 11 bankruptcy.  *Id*.  Seeking to protect the real property they mortgaged as a security for the loan agreement, the plaintiff companies entered into a settlement agreement with Comerica whereby plaintiffs satisfied the amount due and owing on the note in exchange for delivery of the original mortgage note and a discharge of the open-end mortgage on the real property.  *Id*.  The plaintiffs then brought suit against the defendant guarantor for breach of the guaranty that he signed, essentially attempting to seek reimbursement for the amount they had paid to Comerica pursuant to the settlement.  *Id.*
    The court rejected the plaintiffs' attempt to enforce the defendant's personal guaranty and affirmed the summary judgment in favor of the defendant, finding that the plaintiffs, who stood essentially in the position of co-obligors with the defendant, had no cause of action based on breach of the defendant's guaranty.  *Id*. at *3–4.  Here, Cecilian is a creditor attempting to collect on a promissory note with an underlying security.  It is not a co-obligor seeking satisfaction for its own reimbursement of the underlying loan.  Thus, *VCS* is not applicable, and the clear language of the guaranty is controlling.

that where a note secured by a mortgage is transferred or assigned, the assignment of the note operates as an equitable assignment of the mortgage. *See Deutsche Bank Natl. Trust Co. v. Najar*, No. 98502, 2013 WL 1791372, at *15 (Ohio Ct. App. April 25, 2013) ("Even if the assignment of mortgage from Argent to Deutsche Bank was invalid, Deutsche Bank would still be entitled to enforce the mortgage because under Ohio law, the mortgage 'follows the note' it secures."); *Bank of New York Mellon Trust Co. v. Loudermilk*, No. 2012–CA–30, 2013 WL 2423217,at *8 (Ohio Ct. App. June 3, 2013) (same).  Goldsmith responds that those cases do not apply to the instant scenario and that a guaranty does not automatically follow a related note like a mortgage would because a guaranty, unlike a mortgage, is a separate, independent agreement. There is at least some indication that Ohio courts would apply the same principle to a guaranty. *See Metro. Cas. Ins. Co. v. Soucy*, 16 Ohio Law Abs. 538, 539, 1934 WL 1659 (Ohio Ct. App. 1934) ("[I]t is well settled in Ohio that on the sale of the promissory notes the guaranty passes as an incident and is in equity assignable to subsequent purchasers."), cited in 52 Ohio Jur. 3d Guaranty and Suretyship § 179.  However, having already determined that Cecilian has standing to enforce the guaranty based on the plain language of the agreement, the Court declines to rule on the applicability of *Deutsche Bank* or *Loudermilk* to the instant case.

IV.    CONCLUSION

For the reasons stated above, the Court finds that Cecilian has standing to enforce the terms of the guaranty.  The Court therefore **DENIES** Defendant James Goldsmith's Motion to Dismiss Complaint.  (Doc. 5.)

**IT IS SO ORDERED.**


                                      ___s/Susan J. Dlott_____
                                      Chief Judge Susan J. Dlott
                                      United States District Court